The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Bost and Berger and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. All parties are properly before the Industrial Commission.
3. The employee contends that she suffered an injury by accident arising out of and in the course of her employment with employer on April 17, 1999.
4. Bi-Lo is self-insured and their workers' compensation program is administered by MAC Risk Management, Inc. An employment relationship between the employee and Bi-Lo, Inc. existed at the time of her injury.
5. There is no question as to the misjoinder or nonjoinder of the parties.
7. Subsequent to the hearing before the Deputy Commissioner, the parties stipulated plaintiff's average weekly wage to be $98.28.
8. A set of medical records were received into evidence.
 *********** ADDITIONAL EXHIBITS
1. A Form 18 marked as plaintiff's exhibit 1 was received into evidence.
2. A May 7, 1999 letter from Tanya Waters to the plaintiff was marked as plaintiff's exhibit 2 and was received into evidence.
3. A May 6, 1999 statement by Owen Isaacs was marked as defendant's exhibit 3 and was received into evidence.
4. A May 6, 1999 statement by Donna Taylor was marked as defendant's exhibit 4 was received into evidence.
5. A May 7, 1999 statement by Evelyn Brockelsby was marked as defendant's exhibit 5 and was received into evidence.
 ***********
Based upon all of the competent evidence of record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old and had earned a high school degree. Plaintiff had been employed as a deli clerk by the defendant for approximately two months prior to April 17, 1999.
2. Plaintiff had a pre-existing history of problems with her lower back. On May 8, 1998, plaintiff began a course of treatment for her lower back pain with Dr. Shields. Plaintiff had been experiencing lower back pain for approximately six months. Dr. Shields suspected that plaintiff had sustained chronic pain syndrome. Plaintiff's course of treatment included taking medications, undergoing pain management counseling, biofeedback and home therapy. During the time period between May 8, 1998 and April 17, 1998, plaintiff would have flare ups so debilitating that she was unable to walk.
3. On January 6, 1999, plaintiff reported that she had no strength in her right foot and she was experiencing numbness from her knee down. This symptom was consistent with a herniated disc impinging on a nerve root, however, no physician made such a diagnosis at that time.
4. From January 14, 1999 to April 19, 1999, plaintiff did not seek medical treatment for her lower back. After April 17, 1999, plaintiff sought treatment for her back from multiple healthcare providers on an almost weekly basis from that date through September 27, 1999, the date when an MRI revealed that she had a herniated disc.
5. During the two-month period preceding April 17, 1999, plaintiff did complain to co-workers about problems she had with her back.
6. On Saturday April 17, 1999, plaintiff came into work complaining about her back. She reported to co-worker Owen Isaacs that she had run out of the pain medication that had been prescribed for her back pain.
7. On April 17, 1999, plaintiff was performing her regular job duties as a deli clerk lifting hams. When plaintiff bent down to pick up a ham to deliver to a customer, she heard a crunching sound and experienced immediate back pain.
8. On April 18, 1999, plaintiff went to the emergency room for treatment for shooting pain in her back. She reported that she had this shooting pain in her back following heavy lifting at work. She denied experiencing any numbness.
9. On April 19, 1999, plaintiff contacted her supervisor Ms. Brockelsby by telephone to report that she was out of work because of back problems. Plaintiff told Ms. Brockelsby that she was experiencing a recurrent back problem that she believed was not caused by work. This statement is not inconsistent with plaintiff's belief expressed to subsequent healthcare providers that her pre-existing back condition was aggravated by lifting hams at work. Given the varying opinions rendered by the healthcare providers as to the source of plaintiff's pain following April 17, 1999, the Full Commission gives little weight to the plaintiff's lay opinion as to the cause of the pain she began to experience on that date.
10. On April 19, 1999, plaintiff returned to Dr. Shields reporting that her back had started getting better until three days earlier. Plaintiff reported to Dr. Shields that her back pain had moved. Dr. Shields suspected that plaintiff had sustained a back sprain.
11. On April 21, 1999, plaintiff sought to receive medical treatment for her lower back pain with PA Stone at the Blue Ridge Health Center. She reported that her flare up in pain was a result of doing too much lifting for the defendant on April 17, 1999.
12. On April 27, 1999, plaintiff began a course of treatment for her low back pain with Dr. Brooks. Plaintiff reported to Dr. Brooks that she felt that her condition had worsened as a result of lifting heavy meat off a shelf. Dr. Brooks prescribed medications, but declined to obtain an MRI because plaintiff did not report any radicular pain or numbness. Furthermore, Dr. Brooks did not direct the plaintiff to undergo physical therapy because plaintiff expressed an inability to pay for such treatment.
13. On May 6, 1999, plaintiff began a four-week course of chiropractic treatment with Dr. Watson. Dr. Watson suspected that plaintiff had sustained lumbar intervertebral disc syndrome with lumbar disc degeneration causing low back pain. Plaintiff began to improve until she sustained an increase in pain after carrying groceries on June 1, 1999. Plaintiff ended receiving chiropractic care because she was unable to pay for the treatment.
14. On May 11, 1999, plaintiff sought treatment for her back pain at the Occupational Health Center. Plaintiff reported to Dr. Lange that she experienced low back pain as a result of lifting hams at work. Dr. Lange suspected that plaintiff had sustained an S1 joint strain.
15. On June 2, 1999, plaintiff returned to the Margaret R. Pardee Hospital emergency room for continued problems with low back pain. She reported problems following having lifted groceries the day before. She denied experiencing any numbness at that time.
16. On June 17, 1999, plaintiff reported to Dr. Brooks that she had continued modest discomfort with her back. Plaintiff did not report any symptoms that Dr. Brooks believed was consistent with a herniated disc. Because of plaintiff's report of chronic pain, Dr. Werner began to suspect that plaintiff had sustained lumbar facet arthrosis. Dr. Brooks released plaintiff to obtain continued chiropractic care.
17. After her release from Dr. Brooks, plaintiff continued to receive treatment at the Blue Ridge Health Center. On September 3, 1999, plaintiff reported that she had lower back pain to Dr. Hovendon. Dr. Hovendon decided to restrict the plaintiff from returning to work for at least six months and referred her to the Mountain Neurological Center.
18. On September 27, 1999, plaintiff finally received an MRI that revealed that plaintiff had a herniated disc at the L4-5 level on the right with foraminal encroachment. Plaintiff had not reported any radicular pain prior to the taking of this MRI.
19. As a result of the April 17, 1999 incident involving bending over to lift a ham, plaintiff sustained a herniated disc at the L4-L5 level.
20. As a result of the April 17, 1999 incident involving bending over to lift a ham, plaintiff underwent a lumbar discectomy at the L4-5 level on November 30, 1999.
21. As a result of the April 17, 1999 incident involving the lifting of a ham, plaintiff was unable to earn any wages May 1 and 2, 1999 and from September 3, 1999 to the present and continuing.
22. The medical treatment provided by Margaret Pardee Hospital, Dr. Brooks, Dr. Rhoton, Chiropractor Watson and Dr. Hovendon was reasonably necessary to help lessen plaintiff's disability, effect a cure and/or relieve plaintiff's pain.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. On April 18, 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in that she sustained a back injury as the result of a specific traumatic incident and/or an accident of the work assigned. N.C. Gen. Stat. §97-2(6).
2. Plaintiff is entitled to receive temporary total disability compensation for the time periods that include May 1 and 2, 1999 and from September 3, 1999 to the present and continuing at a compensation rate of $65.52. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have the defendant provide all medical treatment arising from this injury to the extent it tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation in the amount of $65.52 per week directly to the plaintiff for the time periods that include May 1 and 2, 1999 and from September 3, 1999 to the present and continuing until further order of the Industrial Commission or until she returns to work at her pre-injury wages or greater. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
3. Defendant shall pay expert witness fees in the amounts of $235.00 to Dr. Rhoton, $235.00 to Chiropractor Watson, and $235.00 to Dr. Brooks.
4. Defendant shall pay all medical expenses incurred or to be incurred for the treatment of plaintiff's herniated disc.
5. Defendant shall pay the costs.
6. Plaintiff's claim for permanent partial disability is HEREBY RESERVED.
This 5th day of November, 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/____________ BUCK LATTIMORE CHAIRMAN